**MINA HAKAKIAN (SBN 237666)**
mhakakian@wwlawcorp.com
**WILLIAMS WOLLITZ HAKAKIAN PC**
1539 Westwood Blvd., Second Floor
Los Angeles, California 90024
Tel.: (310) 982-2733; Fax: (310) 277-5952

Attorneys for Plaintiff,
**ARASH MORADZDEH M.D., INC.**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| **ARASH MORADZDEH M.D., INC.,** | Case No.: 2:23-cv-00208 |
| Plaintiff, | |
| vs. | **COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)** |
| **UNITED HEALTHCARE SERVICES, INC.; UNITED HEALTHCARE INSURANCE COMPANY,** and **DOES 1 THROUGH 100,** | |
| Defendants. | |

Plaintiff, Arash Moradzadeh, M.D. ("Dr. Moradzadeh" or "Plaintiff") alleges as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, and pursuant to 29 U.S.C. § 1132 (e)(1) because the action seeks to enforce rights under the Employee Retirement Income Security Act ("ERISA").

2.    This Court is the proper venue for the action pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District, and pursuant to 29 U.S.C. § 1132 (e)(2) because Defendants conduct a substantial amount of business in this Judicial District.

## II.    THE PARTIES

### A.    The Plaintiff

3.    Plaintiff, Dr. Arash Moradzadeh, M.D. Inc. is a dual board-certified ENT/Head and Neck Surgery and facial plastic and reconstructive surgeon.  His expertise and passion for being at the forefront of leading-edge technology, and commitment to providing exceptional care has made him the quintessential teacher for medical students and colleagues and clinical researcher as well as a highly skilled surgeon in his field.  After graduating from University of California, Los Angeles with the highest honors, he completed his medical education at the University of California, San Diego.  Upon completion and graduation from medical school, he completed an otolaryngology-head and neck surgery residency with an emphasis on facial, nasal, and neck procedures at the world-renowned Washington University Medical School, and he was thereafter recruited to teach advanced techniques at the University.

4.    Dr. Moradzadeh has an extensive number of research publications, book chapters and has served as faculty in national instructions courses teaching,

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

rhinoplasty, sinus surgery, thyroid surgery, blepharoplasty, and face lift surgery. The types of procedures performed by Dr. Moradzadeh include, ear, nose and throat surgery, septoplasty, and related nasal surgeries. Dr. Moradzadeh provided surgical services on behalf of a wide variety of individual patients, many of whom were insured under the terms of group health insurance plans that are governed by ERISA.

**B.    The Defendants**

5.      Plaintiff is informed and believes that Defendants United Healthcare Services, Inc., and United Healthcare Insurance Company (sometimes hereinafter jointly referred to as "United" and/or the "United entities" "Defendants") collectively and with their related companies constitute one of the largest health insurance entities in the United States.

6.      Plaintiff is informed and believes that Defendant United Healthcare Services, Inc. ("United Healthcare") is a Minnesota corporation with its corporate headquarters located in Minneapolis, Minnesota, and that this entity acts as an insurance operating entity within the United family of companies. Plaintiff is informed and believes that this entity is licensed to conduct, and does conduct, insurance operations in California and other states, whether it be under the name United Healthcare or some other operating name.

7.      Plaintiff is informed and believes that Defendant United Healthcare Insurance Company ("UHC") is a Minnesota corporation with its corporate headquarters in Minneapolis, Minnesota, and that this entity acts as an insurance underwriting entity within the United family companies. Plaintiff is informed and believes that this entity is licensed to conduct, and does conduct, insurance underwriting in California and other states, whether it be under the name UHC or some other insurance underwriting entity name.

8.      Plaintiff is informed and believes that United provides multiple services

– 3 –
**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

and functions in the realm of health insurance including: (1) underwriting its own health insurance plans for individuals and families; (2) providing services as an administrator of ERISA health insurance plans on behalf of employers and other entities (hereafter referred to as "ERISA Plans" or a "Plan" or "Plans"); and (3) serving as the insurance underwriter of ERISA Plans which offer health insurance benefits to employees and/or members and/or their families.  Plaintiff is informed and believes that in each of these functions and capacities United acted as the entity with discretion and actual control to administer, decide and pay healthcare benefit claims from insured members and healthcare service providers based on United's own coverage determinations and United's application of claims handling policies and procedures.

9.     Dr. Moradzadeh is informed and believes that United performs its claims handling services for a multitude of ERISA Plans, some of which are self-funded, and some of which are funded by United acting in its capacity as the insurance underwriter for the Plan.  Whether the Plan is self-funded or fully insured, Plaintiff is informed and believes that United provides plan members with plan documents, interprets and purports to apply the plan terms, makes coverage and benefits determinations, handles the appeals of coverage and benefits decisions, and makes payment to medical providers for services rendered in amounts as determined by United.

10.    Dr. Moradzadeh is informed and believes that it is United's responsibility as the claims administrator and/or underwriter for each of all of the ERISA Plans involved in this case[1] to decide which healthcare benefits claims will be paid under the Plan; and which benefits claims will not be paid - - and thereafter to pay benefits to claimants such Dr. Moradzadeh directly out of ERISA Plans assets that are within United's unfettered control in the ordinary course of business.  In simple terms, Dr.

---

[1] There are a total of five Plans (5) that are known to Plaintiff and two (2) Plans that are unknown to Plaintiff at this stage.

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

Moradzadeh alleges on information and belief that United had the responsibility and actual control to make benefits determinations for the healthcare services claims at issue in this case.

        C.    **The Doe Defendants**

        11.    The true names and capacities of the Defendants sued herein as DOES are unknown to Plaintiff at this time, and Plaintiff therefore sues such Defendants by fictitious names.  Plaintiff is informed and believes that the DOES are those individuals, corporations and/or businesses or other entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, and may be financially responsible to Plaintiff for services, as alleged herein.  The Complaint will be amended to allege the DOES' true status and capacities when they have been ascertained.

## III.    THE PATIENTS AND THEIR ERISA PLANS

        12.    The nine patients for whom medical services were provided by Dr. Moradzadeh in this case are designated by initials herein as Patients SHO-ALY, JAM-WEB, MIC-PAY, MIC-FOR, CAM-KHA, SAR-RIT, SUH-MAZ, SAU-ALS, ISA-DAL (collectively the "Patients") for privacy.  A summary listing of the Patients, with amounts billed and paid (zero payment) by United is attached hereto as Exhibit A with the Patient names and identifiers redacted for privacy.[2]

---

[2]    The names and any identifying information about the insured patients are not set forth in this Complaint to preserve and protect the patient privacy.  Plaintiff will make the identifying information available to Defendants pursuant to an appropriate protective order and will request that patient information also be subject to appropriate protection during the litigation proceeding in this Court.

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

13.    Plaintiff is informed and believes that each of the Patients was or is a member or beneficiary of an ERISA Plan which has either been administered and/or underwritten by United.  The Patients and their participating plans are as follows:

| PATIENTS | PARTICIPATING PLANS |
|---|---|
| PATIENT SHO-ALY | The participating plan is unknown at this time. |
| PATIENT JAM-WEB | Equity Residential |
| PATIENT MIC-PAY | Secure Horizons |
| PATIENT MIC-FOR | Paysafe Direct LLC |
| PATIENT CAM-KHA | The Khalili and Nishi Partnership |
| PATIENT SAR-RIT | The participating plan is unknown at this time. |
| PATIENT SHU-MAZ | UHC Student Resources |
| PATIENT SAU-ALS | UHC Student Resources |
| PATIENT ISA-DAL | UHC Student Resources |

14.    In each claim circumstance, and prior to receiving services, each Patient signed an agreement assigning his or her ERISA benefits to Dr. Moradzadeh.

15.    Dr. Moradzadeh does not bring this suit against ERISA plans for whom United acted as administer or insurer in connection with Plaintiff's claims in this action.  Plaintiff is informed and believes that United, and not the ERISA Plans themselves, exercised actual control over the determination and payment of the benefits claims submitted by Plaintiff.  Plaintiff is informed and believes that United acted as the primary point of contact for members and providers to communicate regarding all aspects of benefits and benefit determination. Plaintiff is informed and believes that United Healthcare and UHC are the responsible parties for administering and interpreting the ERISA Plans at issue

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

in this case and are the entities solely responsible for the denial of the benefits.  These parties, therefore, are the proper party defendants in this case.

16.    In the event that any of the listed healthcare plans are not subject to ERISA, Dr. Moradzadeh contends and asserts that the doctrine of supplemental jurisdiction applies with respect to the claims involving such non-ERISA plans.

## IV.    CORE FACTS UNDERLYING THE DR. MORADZADEH CLAIMS FOR PAYMENT

17.    Dr. Moradzadeh provided healthcare services from June 6, 2018 to August 17, 2021 on numerous occasions for the ERISA Plan members and their dependents where the subject ERISA Plan was either administered and/or underwritten by United Healthcare or UHC.  For some Plan members and dependents Dr. Moradzadeh has provided healthcare services on more than one occasion.  In total, Dr. Moradzadeh has performed thirteen (13) healthcare services events for nine (9) Plan members and/or dependents which are the subject of this lawsuit as identified in Exhibit A.

18.    For each claim event at issue in this case, Plaintiff's custom and practice was to contact the United entity by telephone for benefit eligibility confirmation and member coverage verification prior to performing any healthcare services. The regular practice was that Dr. Moradzadeh's representative, and a representative of the United entity would discuss the proposed surgery event by telephone in advance of the services being performed, and in each such telephone communication the United representative advised Dr. Moradzadeh that coverage existed for the patient and that benefits were properly payable to Dr. Moradzadeh as an out-of-network provider.

19.    After the United entity representatives had verified that the specified treatment was covered and that Dr. Moradzadeh was eligible for payment of ERISA Plan benefits, Dr. Moradzadeh provided the following Medical services which are

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

identified in this complaint by CPT[3] Codes.

| PATIENT IDENTIFIER | DOS | CPT CODES |
| --- | --- | --- |
| PATIENT SHO-ALY | 02/06/2020 | 42145;  30465;  30520;  20912; 30140; 30117 |
| PATIENT JAM-WEB | 11/24/2020 | 30465 |
| | 03/17/2021 | 99214; 20553 |
| PATIENT MIC-PAY | 04/06/2021 | 99204 |
| PATIENT MIC-FOR | 05/28/2021 | 99214 |
| PATIENT CAM-KHA | 01/07/2021 | 99214 |
| PATIENT SAR-RIT | 08/17/2021 | 99214 |
| PATIENT SHU-MAZ | 06/06/2018 | 99204; 31231 |
| | 06/27/2018 | 31254; 31267; 30410; 30520 |
| | 07/03/2018 | 31237 |
| | 07/13/2018 | 31237 |
| | 11/30/2018 | 992511 |
| PATIENT SAU-ALS | 11/21/2018 | 30140; 21235; 30520; 30465 |
| PATIENT ISA-DAL | 06/16/2021 | 20912; 30140; 30520; 30465 |

20.    Dr. Moradzadeh relied and reasonably relied on the United entity representative telephonic representations with respect to Patients at issue in this case by providing surgery services in response to the United affirmation that Dr. Moradzadeh

---

[3] CPT Code is the medical procedure descriptive identifier - - CPT means "Current Procedural Terminology". The CPT Code is a medical code maintained by the American Medical Association through the CPT Editorial Panel.  The CPT codes set describes medical, surgical, and diagnostic services and is designed to communicate uniform information about medical services and procedures among physicians, coders, patients accreditation organizations, and payors for administrative, financial, and analytical purposes.

was eligible to receive benefits.  But for the advance representations of the United entity representatives in setting out Dr. Moradzadeh's eligibility for benefits, Dr. Moradzadeh would not have provided or continued to provide surgery services to the Patients.

## V.   DR. MORADZADEH'S BILLINGS SUBMITTED TO THE UNITED ENTITIES PROVIDED ALL NECESSARY INFORMATION TO SUPPORT CLAIM PAYMENT

21.   After the United entity representatives had verified that the specified treatment was covered and that Dr. Moradzadeh was eligible for payment of ERISA Plan benefits, Dr. Moradzadeh provided medical services.

22.   In connection with each of the claims where services were provided, Dr. Moradzadeh has billed a United entity for services rendered to ERISA Plan members and their dependents.  The Dr. Moradzadeh billings were submitted on a standard form 1500 form which identified the name, and address of the provider; the patient name, patient address, sex and ID number; the date of service, the CPT Code and the nature of the services rendered.  Each of Plaintiff's claim billing forms set forth all the requisite information in standard terminology with sufficient detail to enable the United entity to consider and pay the claim in the ordinary course of business.  An exemplar of the Dr. Moradzadeh claim form submitted with the patient's name and identifier redacted for privacy is attached hereto as Exhibit B.

23.   On each billing form submitted by Dr. Moradzadeh, Plaintiff also marked a "Y" in box 27, which affirmed to the United entity that Dr. Moradzadeh was asserting its claim for payment pursuant to a patient assignment of benefits.

24.   The charges for healthcare services submitted by Dr. Moradzadeh to the United entities were in all instances usual, customary and reasonable and in accord with Plaintiff's charges to non-Medicare patients insured by entities other than the subject plans in this case.  Plaintiff's charges for services submitted to the United entities were

also in accordance with the charges of other medical service providers in the community who provided healthcare services that might be considered comparable to those provided by Dr. Moradzadeh. The United entities have abused their discretion and acted in an arbitrary and capricious manner by failing and refusing to honor and pay Dr. Moradzadeh's claims in accordance with ERISA requirements, practices and provisions and Dr. Moradzadeh has suffered resulting damages in an amount to be proven at trial.

25.    In connection with every claim form submitted, Dr. Moradzadeh has received an Explanation of Benefits ("EOB") document from a United entity.

## VI.    PLAINTIFF HAS STANDING TO PURSUE CLAIMS AGAINST UNITED UNDER ERISA FOR PAYMENT OF BENEFITS AND ATTORNEY'S FEES

26.    ERISA governs all aspects of health and medical benefits under ERISA plans, and authorizes a civil action to recover unpaid benefits and attorney's fees.  Dr. Moradzadeh has standing to bring this lawsuit arising from its assignments from patients.

27.    The United entities in this action are the proper party defendants for an ERISA benefits recovery action.  *See, Harris Trust & Sav. Bank v. Salomon, Smith Barney, Inc.,* 530 U.S. 238, 247 (2000); *Cyr v. Reliance Standard Life Ins. Co.,* 647 F.3d 1202 (9th Cir. 2011).

## VII.    DR. MORADZADEH HAS EXHAUSTED ALL ADMINSTRATIVE REMEDIES

28.    For the claim events in this action, United provided EOB documents which purported to explain the denials with respect to Dr. Moradzadeh billing submittals.  The EOBs set forth groundings for United's claim denials.  Dr. Moradzadeh has appealed all of the denials except two claims. However, the EOBs and appeals were woefully

deficient in their explanation of the purported grounding for the denial of Dr. Moradzadeh's bills. For example, one of the groundings used by Unied as a claim denial was that the medical records did not contain sufficient detail to support the billed charges. A statement that that the medical records did not contain sufficient detail to support the billed charges is a meaningless non sequitur, and provides no explanation or basis as to what is needed. Such a vague and non-specific statement in the EOB does not constitute a final determination with respect to the denial.

29. Plaintiff has appealed all of the billing denials asserted in connection with the claims in this case except two claims and , yet the appeals have been futile and have not resulted in any payment from United. However, and irrespective of the appeals being submitted, United in their EOBs has violated the applicable claims procedure regulations governing ERISA plans as set forth in 29 C.F.R. section 2560.503-1 (b). Of particular significance in this case are the regulations dealing with "Manner and Content of Notification of Benefit Determination" set forth in 29 C.F.R. section 2560.503-1 (g)(1). That section requires that the plan administrator shall provide a claimant with a written or electronic notification of any adverse benefit determination. The regulations require the following:

> "The notification shall set forth, in a manner calculated to be understood by the claimant - -
>
> I.   The specific reason or reasons for the adverse determination;
>
> II.  Reference to the specific plan provisions on which the determination is based;
>
> III. A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> IV.  A description of the plan's review procedures and the time limits

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

applicable to such procedures, including a statement of the claimant's right to bring a civil action under Section 502(a) of the Act following an adverse benefit determination on review."

30.    These notification requirements were not met by the EOBs and the appeals responses in the present action, and the regulations are specific about the consequence of a failure by United to comply with notification requirements in its EOBs.  29 C.F.R. section 2560.503-1(1) provides:

"(l) Failure to establish and follow reasonable claims procedures:

In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."

31.    Dr. Moradzadeh is deemed by law to have exhausted administrative remedies because United failed to establish and follow reasonable claims procedures as required by ERISA. United failed to process claims submitted by the Plaintiff in a manner consistent or substantially in compliance with ERISA regulation 29 C.F.R. section 2560.503-1. Among other things, United:

• Failed to set out the specific reason for denial of Plaintiff's claims in its responses transmitted to Plaintiff during the administrative review process;

• Failed to reference the specific Plan provisions upon which its nonpayment determinations were based;

• Failed to give a description of additional materials or information which was needed to pursue and perfect the claims, and an explanation of why such information was necessary;

• Failed to provide Plan documents, or internal rules, guidance, protocols, or other criteria upon which the denial determinations were based;

• Failed to state the denial determinations in a manner calculated to be understood by Plaintiff;

• Failed to provide a reasonable opportunity for full and fair review of the denial determinations;

• Employed policies designed to unduly hamper the review and appeal of claims submitted by Plaintiff;

• Acted systematically in a manner which rendered the administrative appeal process a futile and meaningless endeavor.

32.     When a plan administrator fails to comply with certain administrative process regulations, "a claimant shall be deemed to have exhausted the administrative remedies under the plan," 29 C.F.R Section 2560.503-1; *Vaught v. Scottsdale Health Corp. Health Plan*, 546 F.3d 620, 626-27 (9th Cir. 2008). Administrative process regulations establish a precursory duty in such a manner that a plan administrator's failure to comply with certain regulations provides claimants and their assignees (such as Dr. Moradzadeh) a free pass from any obligation to engage in or exhaust administrative review. "[W]hen an employee benefits plan 'fails to establish or follow reasonable claims procedures consistent with the requirements of ERISA, a claimant need not exhaust because his claims will be deemed exhausted.'" *Barboza v. Cal. Ass'n of Professional Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011) citing 29 C.F.R. Section 2560.503-1; *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1089 (9th Cir. 2012).

33.     Dr. Moradzadeh is not obligated to follow internal review procedures of the ERISA Plans at issue in this case, because United's denial letters in this case (the EOB's and appeal responses) "failed to cite specifically the pertinent plan provision on which the denial was based, as is required by 29 C.F.R. Section 2560.503-1 (f)(2)". *White v. Jacobs Eng'g Group Long Term Disability Benefit Plan,* 896 F.2d 344, 349 (9th Cir. 1989). Furthermore, Plaintiff is excused from obtaining internal review process

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

as United's EOB's and appeal responses failed to provide a specific reason or reason for their benefit determination. *Lee v. Cal. Butcher's Pension Trust Fund*, 154 F.3d 1075, 1080 (9th Cir. 1998). "Conclusory statement which do not give reasons for denial do not satisfy the requirement for specificity" and therefore excuse a plaintiff from "obtain[ing] timely internal review". *Accord White,* 896 F.3d at 349.

34.      In the absence of a properly stated final determination in the pre-litigation claim review process, no statute of limitation ever began running with respect to the Plaintiff's claims. *White, supra,* 896 F.2d at 351; *Bilyeu, supra,* 683 F.3d at 1089; *Chuck v. Hewlett Packard Co.,* 455 F.3d 1026 (9th Cir. 2006).

## VIII.  ASSIGNMENTS TO HEALTHCARE PROVIDERS ARE FAVORED UNDER ERISA LAW

35.      In *Misic v. Bldg. Services Employees Health & Welfare Trust,* 789 F.2d 1377 (9th Cir. 1989) the Ninth Circuit Court determined that assignment of patient benefits under healthcare plans are favored practice to ensure efficiency in the delivery of healthcare services.   "[P]ermitting the assignment of benefits claims to healthcare providers makes it easier for plan participants to finance healthcare and therefore advances the congressional intent behind ERISA." *Misic, supra,* at 1378.  Assignees of a claim for collection of healthcare benefits have been permitted to bring suit on the basis of derivative standing.  *See also, Simon v. Blue Behav. Health, Inc.,* 208 F.3d 1073, 1081 (9th Cir. 2000) (extending derivative standing to healthcare providers to whom beneficiaries assigned their benefits claims for medical care from such providers). Granting standing to healthcare providers furthered the congressional purposes behind ERISA because it enhanced the efficiency and ease of billing among all the interested parties.  *See id.*  The authority of *Misic* and *Simon* were recently reaffirmed in *Bristol SL Holdings, Inc. v. Cigna Health and Life Ins. Co.* (9th Cir. No. 20-56122, January 14, 2022).

– 14 –
**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

IX.   **UNITED HAS WAIVED AND/OR IS ESTOPPED FROM ASSERTING ANY "ANTI-ASSIGNMENT" CLAUSES CONTAINED IN THE PATIENTS' HEALTHCARE PLANS**

36.   Under federal ERISA law, a healthcare plan and its claim administrators are subject to specific rules where benefits are to be denied with respect to claims of a healthcare provider.

37.   When making a claim determination under ERISA, "an administrator may not hold in reserve a known or reasonably knowable reason for denying a claim, and give that reason for the first time when the claimant challenges a benefits denial in court." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1296 (9th Cir. 2014) ("*Spinedex*"); *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 719 (9th Cir. 2012) (*"Harlick"*).  "A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court[.]" *See id.*  "Anti-assignment clauses in ERISA health plans are valid and enforceable." *Spinedex*, *supra*, 770 F.3d at 1296.  However, a plan administrator can waive the right to enforce an anti-assignment provision.  *See Spinedex supra*. at 1296-97 (acknowledging the right to assert waiver, but concluding on the specific facts of *Spinedex* that the defendant-claims administrator was not required to raise the anti-assignment provision during the administrative claim process in that case because "there [wa]s no evidence that [the claims administrator] was aware, or should have been aware, during the administrative process that [the plaintiff-medical provider] was acting as its patient's assignee").

38.   Waiver is "the intentional relinquishment of a known right." *Gordon v. Deloitte & Touche LLP Grp. Long Term Disability Plan*, 749 F.3d 746, 752 (9th Cir. 19 2014) (citing *Intel Corp. v. Hartford Accident & lndem. Co.*, 952 F.2d 1551, 1559 (9th 2nd Cir. 1991) (Waiver occurs when "a party intentionally relinquishes a right, or

1  when that party's acts are so inconsistent with an intent to enforce the right as to induce

2  a reasonable belief that such right has been relinquished.")).  To show that a claims

3  administrator waived an anti-assignment provision that would otherwise foreclose the

4  healthcare services provider from having statutory standing in an ERISA action, the

5  provider must plead sufficient facts to show that the plan administrator "was aware or

6  should have been aware, during the administrative [claim] process that [the provider]

7  was acting as its patients' assignee." *See Spinedex,* 770 F. 3d at 1297.  Plaintiff has

8  pleaded waiver facts in this action in accordance with *Spinedex* and *Harlick*.  Each of

9  Dr. Moradzadeh's billing form included an "X" in the Form 1500 which notified the

10  claims administrator that the claim was being pursued by way of an assignment.  These

11  facts establish that United was aware and was put on notice that from the time that the

12  claim was submitted that the provider was submitting the claims based on an assignment

13  and has waived any purported anti-assignment clause in any of the ERISA Plans and

14  United is estopped from asserting any such clause.

15       39.    United at all relevant times was aware that Plaintiff was pursuing his

16  claims on the basis of written assignments of benefits.  At no time prior to the filing the

17  present litigation has United ever asserted that any bar or legal impediment existed in

18  the Plans with respect to Plaintiff's unfettered right to receive payment of benefits as an

19  out-of-network provider un the Plans.  Specifically, United never stated any intention

20  to assert any anti-assignment clause during the pre-litigation administrative review

21  process.

22       40.    Further, United is estopped from asserting anti-assignment by the fact that

23  during the claim administration review process it represented that Plaintiff was eligible

24  to receive plan benefits.  The authority of *Spinedex* and *Harlick* on the waiver and

25  estoppel issues was reaffirmed in *Beverly Oaks Physicians Surgery Center, LLC v. Blue*

26  *Cross and Blue Shield of Illinois,* 983 F.3d 435 (9th Cir. 2020) ("*Beverly Oaks*').  Under

27

28
**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE**
**ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

*Beverly Oaks,* the promise that Dr. Moradzadeh was eligible to receive plan benefits as an out-of-network healthcare provider is sufficient to estop United from asserting a plan anti-assignment in this case.

## X.   UNITED HAS NO GROUNDING TO ASSERT STATUTE OF LIMITATIONS WITH RESPECT TO PLAINTIFF'S CLAIMS

### A.   United Failed to Provide a Final Determination; And Accordingly, No Statute of Limitations Has Begun to Run

41.   After *Beverly Oaks* was decided on December 18, 2020, this Court's determination became the subject of a District Court opinion issued May 25, 2021 in *Brand Tarzana Surgical Institute, Inc. v. Aetna Life Insurance Company, Inc., et. al.,* Case No. 18-9434 DSF (AGRx) ("*Brand v. Aetna*").  In its Order involving anti-assignment defenses (Dkt. 72), the District Court in *Brand v. Aetna* concluded that there was no final determination in that case due to a failure of the insurer to submit adequate notification of adverse benefits determinations:

> Aetna argues some claims are untimely because some of the plans limit the time period in which one must seek recovery, and Brand's lawsuit is outside those time periods. Br. at 14-17; Aetna Suppl. Br. at 16-17. However, given the inadequacies of the adverse benefit notifications discussed above, there was no final decision on those claims. The contractual limitations therefore do not apply.  (Dkt. 72, p. 8)

42.   The District Court in *Brand v. Aetna* cited to earlier Ninth Circuit authority as the basis for its statute of limitations determination:

> *White v. Jacobs Engineering Group Long Term Disability Benefit Plan*, 896 F.2d 344, 350 (9th Cir. 1989) supports this conclusion. In *White*, the Ninth Circuit held that "[w] hen a benefits termination notice fails to explain the proper steps for appeal, the plan's time bar is not triggered." *Id*. (Dkt. 72, p. 8-9)

43.   The *Brand v. Aetna* court grounded its statute of limitations determination on the ERISA claims procedures regulations:

> In reaching its decision, the Ninth Circuit [in *White*] reasoned that an administrator should not be permitted to deter a claimant from filing a timely appeal "by sending vague and inadequate appeal notices, withholding information claimants need to appeal effectively." *Id*. at 351.  (Dkt, 72, p. 9)

44.   The District Court in *Brand v. Aetna* found the reasoning in *White* was applicable to contractual time limits for filing a civil action in addition to an administrative appeal. The District Court cited to *Bourgeois v. Employees of Santa Fe International Company*, 215 F.3d 475, 482 (5th Cir. 2000) (holding where an employer's failure to give an employee adequate claims procedure information caused the employee to fail to exhaust his administrative remedies and extinguished the employee's time to apply for benefits, his claim should be remanded to the plan administrator and the employer was estopped from arguing the employee's claim was time-barred); and *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1089 (9th Cir. 2012) (holding a district court abused its discretion by finding a claim was time-barred because the letter outlining administrative remedies and time to sue was ambiguous and "[a] communication from a claims administrator to a plan participant should clearly apprise her of her rights and obligations under the plan"); and *Chuck v. Hewlett Packard Co.,* 455 F.3d 1026 (9th Cir. 2006) (finding the failure to comply with ERISA's notification procedures was a "highly significant factor" for determining whether the statutory limitations period began running).

45.   Similarly in the present action, the United's EOBs and appeal responses failed to provide adverse benefits notification sufficient to trigger the running of a statute of limitations.  Absent a final determination, the Plaintiff claims remain fully open for further administration claim consideration and claim resolution at trial.

**B.     A Three-Year Period of Equitable Tolling Applies To Preclude United From Asserting Statute of Limitations as a Defense to the Claims Asserted by Dr. Moradzadeh in this Action**

**(1)     California Law Applies For Statute of Limitations Purposes As The State Where The Claims Arose**

46.     The statute of limitations in this case is subject to equitable tolling for the period December 18, 2017 to December 17, 2020.  All of the subject claims fall within the statute if equitable tolling is applied.

47.     ERISA is silent as to the statute of limitations to be applied to the benefits claims asserted by SJN in this case.  Where a statute of limitations is lacking in federal court litigation, the District Court is to look to and apply (i.e. borrow) the most analogous state statute.  The Ninth Circuit has ruled that the applicable borrowing statute in the context of an action for ERISA benefits is the state where the claim for benefits arose.  *Gordon v. Deloitte & Touche LLP Group Long Term Disability Plan,* 749 F. 3d 746, 750 (9th Cir. 2014) (citing *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Insurance Program,* 222 F. 3d 643 (9th Cir. 2000).

48.     In the present case, the claims for benefits arose in California, and the applicable statute is the 4-year California statute for breach of contract.  *See Northern Cal. Retail Clerks v. Jumbo Markets, Inc.* 906 F. 2d. 1371, 1372 (9th Cir. 1990) However, when a statute of limitations is borrowed, the tolling and suspension provisions which are part of the statute under applicable state law must also be borrowed in the federal court action, and in the present case California equitable tolling provisions will apply to extend the application of the statute.  *See, also, Heimeshoff v. Hartford Life & Accident Ins. Co.,* 571 U.S. 99, 113 (2013) (equitable tolling of a statute of limitations may be appropriate in extraordinary circumstances).

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

**(2)  Waiver And Estoppel Apply and Provide a Grounding For Equitable Tolling of the Statute of Limitations**

49.     The Supreme Court in *Heimeshoff* stated (571 U.S. at 104) that waiver and estoppel may prevent a claims administrator from invoking a limitations period as a defense.  Here, waiver and estoppel both apply to preclude United from asserting statute of limitations without an extension for a 3-year equitable tolling period, as defined below.

**(3)  Equitable Tolling Begins To Run No Later Than December 18, 2017 And Continues To Apply Until December 17, 2020**

50.     It appeared to be settled law in the Ninth Circuit from and after 2014 that waiver of an anti-assignment clause by a healthcare plan claims administrator would occur if the administrator was aware, or should have been aware during the administrative process that a healthcare provider was asserting claims pursuant to a patient assignment.  *Spinedex, supra,* 770. F. 3d at 1296-97.  Under *Spinedex,* and the Ninth Circuit's 2012 decision in *Harlick*, a healthcare claims administrator was barred by waiver and estoppel from failing to give a reason for a benefits denial during the pre-litigation claim administration process and then raising that reason for the first time when the denial of plan benefits was challenged by the healthcare provider in federal court.

51.     Despite what should have been a controlling body of Ninth Circuit law, a District Court in the Central District of California in 2016 struck out in an unexpected and erroneous new direction in the handling of anti-assignment clauses.  In the case of *Brand Tarzana Surgical Institute, Inc. v. International Longshore & Warehouse Union-Pacific Maritime Association Welfare Plan*, District Court No. 2-14-cv-03191-FMO-AGRx ("*Brand Tarzana v. ILWU*") the District Court entered an Order

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

1  Regarding Cross Motions for Summary Judgment on March 8, 2016.  (Dkt. 69)  In its

2  Order, the District Court concluded that Plaintiff Brand Tarzana had failed to prove

3  waiver of an anti-assignment clause that was contained in the ILWU-PMA Welfare

4  Plan which was the subject of that case.  The District Court Order dated March 8,

5  2016, concluded that the Plan's failure to raise the anti-assignment clause prior to

6  litigation did not constitute waiver, since the anti-assignment clause was not "a

7  substantive basis for denial" (Dkt 69, p. 15)  The District Court wrongly concluded in

8  *Brand Tarzana v. ILWU* - - in direct contradiction to the controlling authority of

9  *Spinedex* and *Harlick* - - that the failure to raise the anti-assignment clause was

10  irrelevant to a pre-litigation denial of a healthcare claim since, until a suit was filed,

11  there was nothing  that occurred within the range of conduct the anti-assignment

12  clauses purported to prohibit.  (Dkt. 69, pp. 15-16) In the *Brand Tarzana v. ILWU*

13  circumstance, where none of the claims at issue were denied in the pre-litigation

14  administrative claim process on the basis of the anti-assignment clause, the District

15  Court erroneously decided that any failure to raise the clause pre-litigation as a ground

16  for denial of plaintiff's claims did not constitute a waiver of the provision.  (Dkt. 69,

17  p. 16)  This District Court ruling on March 8, 2016 put in place an unfortunate and ill-

18  conceived framework for addressing anti-assignment clauses which rendered it

19  impossible for healthcare providers to file and pursue ERISA benefits recovery

20  lawsuits where the subject ERISA plans contained an anti-assignment provision.  The

21  erroneous framework which was adopted by the District Court in 2016 was

22  subsequently put aside on December 17, 2020 when the Ninth Circuit put anti-

23  assignment law back on a proper footing in its published *Beverly Oaks* decision, <u>but</u>

24  <u>until corrective action was taken in *Beverly Oaks* in 2020, healthcare providers such as</u>

25  <u>Noveon had no realistic or viable means of pursuing their assignment-based</u>

26  <u>healthcare claims in federal court.</u>  In the present action, the healthcare claims which

27

28

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

arose during the period when Ninth Circuit law was premised on a mistaken conceptual framework favoring anti-assignment and the claims where the right to sue matured during this time frame should be subject to equitable tolling.

52.     Brand Tarzana immediately appealed the adverse District Court ruling of March 8, 2016.  *See* Ninth Circuit Case No. 16-55503, *Brand Tarzana Surgical Institute, Inc v. ILWU-PMA Welfare Plan,* 706 F.App'x 442 (9th Cir. 2017).  However, the Ninth Circuit panel that heard the case on appeal affirmed the District Court ruling by way of a Memorandum Decision filed December 18, 2017.  (Dkt. 76)  <u>The Ninth Circuit in *Brand Tarzana v. ILWU* erroneously agreed with the District Court that the anti-assignment clause could indeed be held in reserve during the pre-litigation claims administrative process, and then be put forward for the first time in benefits recovery litigation as a "litigation defense".</u>

53.     The legal issue of anti-assignment clauses as a "litigation defense" was the subject of ongoing litigation over a period of three years from the time the *Brand Tarzana v. ILWU* Memorandum Decision was entered in the Ninth Circuit (December 18, 2017) to December 17, 2020 when the published opinion in *Beverly Oaks* was issued which put the anti-assignment issue to rest once and for all.  The Ninth Circuit filed its published opinion in *Beverly Oaks,* on December 17, 2020, which effectively repudiated and reversed its earlier *Brand Tarzana v. ILWU* Memorandum Decision. Anti-assignment in the case of *Brand Tarzana v. ILWU* had been considered a "litigation defense" and not a substantive basis for claim denial - - but this "litigation defense" framework only lasted in this Circuit for three years until it was rejected in *Beverly Oaks* on December 17, 2020.  The *Beverly Oaks* panel decided that there was "no rationale" for condoning an insurer or plan administrator's course of conduct in failing to raise the anti-assignment provision during the administrative claims process and then later asserting that provision as a "litigation defense" to avoid payment of

benefits.  The *Beverly Oaks* Court found that the *Brand Tarzana v. ILWU* "litigation defense" framework as a basis to deny waiver of the anti-assignment clause left an insurer or plan administrator unaccountable for prior conduct contrary to its litigation provision.

54.     Indeed, taking it a step further, the *Beverly Oaks* Court further concluded that Blue Cross in that case made an actionable misrepresentation to the surgery center plaintiff in *Brand Tarzana v. ILWU*, by stating that plaintiff was "eligible' to receive plan benefits.  The *Beverly Oaks* Court in its published opinion of December 17, 2020 concluded that this misrepresentation estopped Blue Cross from asserting the anti-assignment defense.

55.     Waiver and estoppel apply in this case to preclude an anti-assignment defense, just as they did in *Beverly Oaks,* and *Beverly Oaks* reopened the door for filing of ERISA benefits recovery actions by healthcare providers based on patient assignments of benefits.  The statute of limitations should be tolled for the three-year period in which the door to benefits recovery was improperly closed

**C.     California Emergency Rule 9 Tolls the Statute of Limitations for 178 Days Between April 6, 2020 to October 1, 2020.**

56.     On March 4, 2020, Governor Gavin Newsom declared a state of emergency in response to the spread of COVID-19 in California.  On March 19, a state wide stay-at-home order was issued.  On March 27, 2020, Governor Newsom issued Executive Order N-38-20 which, among other things, gave the Judicial Council of California the authority to take actions necessary to maintain access to the essential operations of California's court system while protecting the health and safety of California residents.  Over the course of several months in 2020, the Judicial Council adopted 13 emergency rules.

57.     Amongst the 13 emergency rules is Emergency Rule 9, which is intended

to apply broadly to toll any statute of limitations on the filing of a pleading in court asserting a civil cause of action.  Under Emergency Rule 9,  a statute of limitations requirement was implemented, with a total of 180 days tolled between April 6, 2020 and October 1, 2020.  Dr. Moradzadeh proceeds with the claims against United based on the tolling of the statute of limitations during the period between April 6, 2020 to October 1, 2020 premised upon California Emergency Rule 9.   Therefore, Dr. Moradzadeh's claims should not be barred by the statute of limitations.

**D.    The Statute of Limitations for Breach of Contract Does Not Begin To Run Until The Contract No Longer Is Executory**

58.    The Supreme Court in *Mather v. Mather* (`944) 25 Cal.2d 582, 586 stated:

> [T]he law recognizes, as a matter of classification, two kinds of contracts - - executory and executed. The former is one in which some acts remain to be done, while the latter is one where everything is completed at the time of agreement, without any outstanding promise calling for fulfillment by the further act of either party.

59.    In general, insurance policies including health insurance plans require the policy holder to share a portion of the future financial risk covered by policy either through deductibles, self-insured retentions or retrospective premiums.  In healthcare insurance policies where the insurer has a continuing obligation to provide coverage and the insured has continuing obligation to pay standard premium, deductible, co- pay, the insurance contract is an executory contract.  The insurance policy in essence is an agreement for the insured to pay the insurer for continuously providing coverage and therefore is an executory contract.

60.    Under California law, statutes of limitations for breach of contract does not commence to run as long as the contract is executory.  In *Lubin v. Lubin* (1956) 144

– 24 –

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

Cal.App.2d 781 791 the court stated,

> "In those cases where a continuing contract involves the rendering of benefits to the plaintiff before the date for final performance the rule is as stated in California Jurisprudence, section 110, page 511: 'In the case of a continuing executory contract, if the parties do not mutually abandon and rescind it, it is optional with the plaintiff to sue immediately upon the breach or to wait until the expiration of the time designated in the contract before commencing his action.'" *Oil Base, Inc. v. Cont'l Cas. Co.* (1969) 271 Cal. App. 2d 378, 389-90 (citations omitted).

61.    In *Oil Base,* the insured sued the insurer for breach of contract and reformation. The trial court entered judgment for the insurer based on its determination that the claims were barred by the statute of limitations. The Court of Appeal reversed based on the continuing executory nature of the liability insurance policy issued by Continental. Similar to *Oil Base,* United as the insurer has a continuing duty to provide coverage under the health insurance plan for covered services and the patients/insured likewise have the continuing obligation under the Policy to pay their premium in installments and cover their co-pay and deductibles for the services received.

62.    Each Insurance Plan in this action remains executory as long as the Insured/Patient/Beneficiary has premium payment obligations, deductible and co-payments and United has a continued obligation to provide coverage for services rendered. As the obligations of the insured/beneficiary/patient to pay co-pay and deductible and/or premium continues and United's obligations to pay for covered expenses continues with respect to claims in Exhibit A, the statute of limitations has not matured and has not begun to run until either the duty to pay premium, co-pay and/or deductible has extinguished, or the ERISA Plan has been rescinded or terminated by United. None of Dr. Moradzadeh's claims should be barred by the statute.

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

1
2
3
4
5

## FIRST COUNT

### (Against United Defendants)

### Enforcement Under 29 U.S.C. Section 1132 (a)(1)(B) For Failure To Pay
### ERISA Plan Benefits And For The Recovery Of Reasonable Attorney's
### Fees And Costs Under 29 U.S.C. Section 1132 (G)(1)

6
7
8

63.     The allegations of the prior paragraphs (paragraphs 1 to 62) of this Complaint are hereby incorporated by reference in this First Count as if fully set forth at length.

9
10
11

64.     This cause of action is alleged by Plaintiff for relief in connection with claims for medical services rendered in connection with ERISA Plans administered and/or underwritten by United.

12
13
14
15
16
17
18
19
20

65.     Dr. Moradzadeh seeks to recover ERISA Plan benefits and enforce rights to benefits payment under 29 U.S.C. section 1132 (a)(1)(B); and under 29 U.S.C. section 1132 (g)(1) for recovery of reasonable attorney's fees and costs.    Dr. Moradzadeh has standing to pursue these claims as the assignee of member benefits. As the assignee of benefits, Plaintiff is a "beneficiary" entitled to collect benefits and is the "claimant" for the purposes of the ERISA statute and regulations.  ERISA authorizes actions under 29 U.S.C. Section 1132 (a)(1)(B) to be brought directly against the United Defendants as the parties with actual control over the benefit and payment determinations with respect to Dr. Moradzadeh's claims.

21
22
23
24

66.     By reason of the foregoing, Plaintiff is entitled to recover ERISA benefits for the services rendered to patients identified in Exhibit A due and owing in an amount to be proven at trial, and Dr. Moradzadeh seeks recovery of such benefits by way of the present action.

25
26
27

67.     29 U.S.C. Section 1132 (g)(1) authorizes the Court to allow recovery of reasonably attorney's fees and costs incurred in this action.  Dr.

28

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

Moradzadeh has incurred, and continues to incur, attorney's fees and costs in its pursuit of benefits, and is entitled to recover its reasonable attorney's fees and costs in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against United Defendants as follows:

1. For damages against United Defendants in an amount to be proven at trial in connection with the healthcare benefits claim properly due and payable with respect to the services rendered to the Patients identified in Exhibit A hereto under the terms of the ERISA Plans at issue in this case.

2. For interest at the applicable legal rate.

3. For reasonable attorney's fees and costs in an amount to be proven at trial.

For such other relief as the Court may deem just and proper.

**Dated:** January 12, 2023

Respectfully submitted,
**WILLIAMS WOLLITZ HAKAKIAN PC**


By:   /s/ Mina Hakakian
Mina Hakakian
Attorney for Plaintiff Arash Moradzadeh
M.D. Inc.

COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE
ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)